# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 19, 2003 Session

## TERRANCE L. TURNER AND JERMAINE MONTEZ BRADFORD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-A-49     Seth Norman, Judge**

---

**No. M2002-02429-CCA-R3-PC - Filed March 25, 2004**

---

Petitioner Terrance L. Turner was convicted in the Davidson County Criminal Court of two counts of attempted second degree murder and one count of especially aggravated kidnapping. Turner received a total effective sentence of twenty-eight years incarceration in the Tennessee Department of Correction. Subsequently, Turner filed for post-conviction relief, alleging that he received the ineffective assistance of counsel. Petitioner Jermaine Montez Bradford was convicted of especially aggravated kidnapping and was sentenced to twenty-three years incarceration. Thereafter, Bradford filed for post-conviction relief, alleging that he received the ineffective assistance of counsel because counsel denied him the right to testify at trial. The post-conviction court denied both petitions and the petitioners timely appealed. Upon our review of the record and the parties' briefs, we affirm the judgments of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

David R. Heroux, Nashville, Tennessee, for the appellant, Terrance L. Turner.

Larry B. Felts, Nashville, Tennessee, for the appellant, Jermaine Montez Bradford.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Carlton Drumwright, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual Background

A. Trial

This court previously summarized the facts underlying the petitioners' convictions for especially aggravated kidnapping on direct appeal as follows:[1]

> Misty Perry testified that she went to the Main Street Market in East Nashville on July 23, 1996. Perry saw Bradford while she was in the market, but he did not say anything to her. When Perry went outside, she was approached by Turner, who asked her whether she would like to purchase some marijuana. When Perry responded that she would, Turner then pointed at the street and stated that the marijuana was "over there." At this point, Perry entered her vehicle and sat in the driver's seat and Turner entered the vehicle and sat in the passenger seat. Turner then stated that they needed to wait for his friend to come out of the market.
>
> Perry testified that after Bradford came out of the market, he entered her vehicle and sat directly behind her. Turner then instructed Perry to drive onto the road and turn right. After Perry followed this instruction, Turner pulled out a gun, held it against Perry's leg, and demanded that she give him her money. When Perry denied that she had any money, Turner stated that he had seen her put money in her pocket. At this point, Turner pointed the gun at Perry's head and asked Bradford whether he should shoot Perry in the head or in the leg. Bradford then replied, "Go ahead and shoot her." After this comment, Turner put the gun against Perry's leg and instructed her to drive down a side street.
>
> Perry testified that when Turner told her to turn down a side street, she became frightened about what might happen to her, so she pulled into the parking lot of a ParMart and jumped out of the moving vehicle. Perry then ran into the store, looked back outside through the glass doors, and saw Turner get into the driver's seat of the vehicle and drive away. The cashier in the store then told Perry that he had called the police.

---

[1] Turner's complaints on post-conviction relate only to his conviction for especially aggravated kidnapping. Accordingly, our recitation of the facts relates solely to that conviction.

State v. Turner, 41 S.W.3d 663, 668-69 (Tenn. Crim. App. 2000). This court affirmed the judgments of the trial court on direct appeal. Id.

## B. Post-Conviction

### 1. Petitioner Turner

Subsequent to his convictions, Turner filed for post-conviction relief, raising eight allegations of ineffective assistance of counsel. Specifically, Turner contended that counsel was ineffective by failing to:

> A. Object to the trial court's failure to instruct the jury as to the less[e]r-included offenses applicable to the charge of Especially Aggravated Kidnapping.
>
> B. Object to the trial court's failure to properly instruct the jury as to the "deadly weapon" element of the crime of Especially Aggravated Kidnapping.
>
> C. Move for a new trial based on the trial court's failure to instruct the jury as to the less[e]r-included offenses applicable to the charge of Especially Aggravated Kidnapping.
>
> D. Move for a new trial based upon the trial court's failure to properly instruct the jury as to the "deadly weapon" element of the crime of Especially Aggravated Kidnapping.
>
> E. Preserve for appellate review the issue of the trial court's failure to instruct the jury as to the less[e]r-included offenses applicable to the charge of Especially Aggravated Kidnapping.
>
> F. Preserve for appellate review the issue of the trial court's failure to properly instruct the jury as to the "deadly weapon" element of the crime of Especially Aggravated Kidnapping.
>
> G. Adequately investigate the testimony that [Turner] wished to present at trial and advised [him] not to testify.
>
> H. Timely convey plea bargain offers to [Turner].

Turner testified at his post-conviction hearing that he was seventeen years old at the time of the offenses and nineteen years old at the time of trial. Turner stated that he wanted to testify at trial, but he declined to do so on the advice of counsel. Turner maintained that if he had testified he would

have explained that "[t]he whole thing was drug related." He would also have explained that he did not point a gun at the victim but merely "displayed" the weapon.

Turner's trial counsel also testified at the post-conviction hearing. Counsel testified that he informed Turner that he had the right to testify. However, counsel believed that doing so was ill-advised because the testimony of the other witnesses was "totally at variance with [Turner's] version of the facts."

Counsel acknowledged that Turner had been indicted on two counts of attempted first degree murder and one count of especially aggravated kidnapping.[2] Counsel testified that he had considered the issue of lesser-included offenses prior to trial and during trial. He ultimately requested that the trial court charge the jury on attempted second degree murder and reckless endangerment as lesser-included offenses of both counts of attempted first degree murder. The trial court refused to charge reckless endangerment but agreed to charge attempted second degree murder. Turner was found guilty of attempted second degree murder on both counts.

Counsel admitted that he did not request a charge on aggravated kidnapping as a lesser-included offense of especially aggravated kidnapping. He believed that Turner would be convicted of the charged offense or found not guilty; he did not believe the jury would find Turner guilty of a lesser-included offense. Counsel maintained that the jury's decision depended on whether they believed Perry. Counsel stated, "I don't think there were degrees of believing her. I think she was pretty certain on what she said happened."

Counsel conceded that he was not aware that the trial court was required to charge a lesser-included offense if "there is testimony to support a jury finding of guilt on that charge." He also conceded that he did not raise the issue of lesser-included offense instructions in Turner's motion for new trial or his direct appeal.

Finally, counsel testified that he listened to the jury instructions as the trial court charged the jury, but he did not peruse the written jury instructions. As such, he did not notice that in the charge of especially aggravated kidnapping, the definition of "deadly weapon" included the term "forearm" instead of the correct term "firearm."

The post-conviction court denied Turner's petition, finding that "[a]s to petitioner's claims regarding jury instruction failure, those issues were not brought up on appeal and will be considered as having been waived and therefore, are not eligible for review under [Tennessee Code Annotated section] 40-35-206(g)." The post-conviction court found that Turner decided not to testify based upon the advice of counsel which was based upon sound trial strategy. Additionally, the post-conviction court noted that Turner did not present any proof supporting his claim that counsel failed to convey plea offers and determined that this complaint was "unfounded."

---

[2] Turner was also indicted for aggravated robbery and carjacking, but the jury found him not guilty of those offenses.

-4-

On appeal, Turner argues that the post-conviction court erred in finding that the issues regarding the jury instructions had been waived. He maintains that the matter should be remanded to the post-conviction court "for further consideration of all claims raised with the requirement that the court provide in writing its . . . finding of fact and conclusion of law." In the alternative, Turner contends that the post-conviction court should have determined that counsel was ineffective.

## 2. Petitioner Bradford

Subsequent to his conviction, Bradford filed for post-conviction relief, alleging that counsel denied him the right to testify at his trial. At the post-conviction hearing, Bradford testified that he was fifteen years old at the time of the offense and was seventeen years old at the time of trial. Bradford's family hired counsel to represent him at trial. Counsel met with him "quite frequently" prior to trial. Bradford repeatedly told counsel that he wished to testify at trial; however, counsel told him that he "wasn't going to testify."

Bradford asserted that counsel did not explain that he had a constitutional right to testify. He maintained that his testimony would have been helpful and would "have been contrary to the evidence that was set forth . . . by the State." Bradford admitted that he did not complain at trial that counsel had denied him the opportunity to testify. Bradford maintained that at the time of trial he was not aware that he had a right to testify. However, he explained that "over the course of time as I turned 18, I was took off lock down, so I got more access to the law library." He "studied a few law books" and became aware that he had the right to testify at trial.

Next, Bradford's trial counsel testified at the post-conviction hearing. Counsel stated that he discussed with Bradford "all the ramifications, whether it was a good idea for him to testify or whether it was not a good idea." Counsel believed that Bradford's testimony would not be beneficial, and he was particularly concerned about Bradford's potential behavior on the stand. Specifically, counsel explained, "He had been locked up since he was 15 and he had been in segregation over there at the jailhouse. And I mean, he was a real angry young man. I was just afraid that he would explode [on the stand]."

Counsel testified that he advised Bradford that he had the right to testify, but he cautioned Bradford that he did not believe that it would be advisable. Counsel maintained, "If he would have been just out right adamant about it, I would have had no choice [but to let him testify]." Based upon counsel's advice and trial strategy, Bradford ultimately decided not to testify.

After considering the foregoing testimony, the post-conviction court denied Bradford's petition for post-conviction relief. The post-conviction court found that

> [c]onsidering the youth and alleged anger of the petitioner, having the petitioner remain silent does not seem an unreasonable tactic on behalf of the defense. . . . [T]he petitioner did, in fact, knowingly and

intelligently waive his right to testify by coalescing and remaining
silent at the trial in reliance upon counsel's strategic course of action.

Finally, the post-conviction court stated, "The petitioner testified at the post-conviction hearing that had he testified at trial, the jury would have acquitted him, but offered no support for this theory. It is hard to envision how the outcome would have been different merely based on conjecture alone." On appeal, Bradford contends that the post-conviction court's ruling was error.

## II.  Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his or her post-conviction petition by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-210(f) (1997).[3]  "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'"  State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)).  Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact.  See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).  Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings.  Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).  However, we will review the post-conviction court's conclusions of law purely de novo.  Id.

"To establish ineffective assistance of counsel, [a] petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).  In evaluating whether a petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases.  See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

### A.  Petitioner Turner

On appeal, Turner contends that the post-conviction court "failed to consider all of the claims in support of [his] contention that he did not receive effective assistance of trial counsel or did not express its findings of fact and conclusions of law in writing or orally from the bench."  Further,

---

[3] Since the post-conviction hearing in the instant case, this provision has been codified at Tennessee Code Annotated section 40-30-110(f) (2003).

Turner argues that the evidence adduced at trial could have supported an instruction on lesser-included offenses of especially aggravated kidnapping, namely aggravated kidnapping. Finally, Turner complains that the definition of deadly weapon in the instruction on especially aggravated kidnapping was faulty in that the word "forearm" was used instead of "firearm."

Regarding any lesser-included offense instructions, our supreme court has noted that "[t]he trial court's duty to charge juries as to the law of each offense included in an indictment applies whether or not a defendant requests such an instruction." State v. Wilson, 92 S.W.3d 391, 394 (Tenn. 2002); see also Tenn. Code Ann. § 40-18-110(a) (1997); Yasmond Fenderson v. State, No. E2001-01088-CCA-R3-PC, 2002 WL 832205, at *5 (Tenn. Crim. App. at Knoxville, May 2, 2002), perm. to appeal denied, (Tenn. 2002). Based upon the trial court's duty to instruct the jury regardless of counsel's request, this court has previously declined to find that counsel was ineffective for failing to pursue lesser-included offense instructions at trial. See Terry David Stephens v. State, No. M2001-01036-CCA-R3-PC, 2002 WL 31890860, at *7 (Tenn. Crim. App. at Nashville, Dec. 30, 2002), perm. to appeal denied, (Tenn. 2003). Accordingly, we conclude that Turner failed to establish the ineffective assistance of counsel in this regard.

Turner's complaints regarding the failure of counsel to raise the issue in his motion for new trial and on appeal require a different analysis. Recently, in Jerry Neal Carpenter v. State, No. E2001-01732-SC-R11-PC, 2004 WL 51818, at *5 (Tenn. at Knoxville, Jan. 13, 2004) (publication pending), our supreme court set forth a "non-exhaustive list" of factors which "is useful in determining whether an attorney on direct appeal performed reasonably competently in a case in which counsel has failed to raise an issue." Turner presented absolutely no proof on this issue at the post-conviction hearing. See Joseph D. Taylor v. State, No. M2003-00138-CCA-R3-PC, 2004 WL 350641, at *7 (Tenn. Crim. App. at Nashville, Feb. 20, 2004). Accordingly, he has failed to meet his burden of establishing by clear and convincing evidence the ineffective assistance of counsel on appeal.

Finally, Turner complains of counsel's failure to object to or appeal the trial court's definition of especially aggravated kidnapping. The written instructions to the jury regarding the offense of especially aggravated kidnapping provided:

> A "deadly weapon" is a forearm or anything manifestly designed, made or adapted for the purpose of inflicting death, or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Turner contends that the term "forearm" was incorrectly substituted for the term "firearm."

We have previously noted that "[w]e must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). After our examination of the complete written jury instructions, we note that "deadly weapon" was defined

-7-

a total of three times. The foregoing instruction was the only incorrect instruction and is clearly a typographical error. In the two remaining instructions, the definition used the correct term "firearm." Thus, we conclude that Turner failed to establish that he was prejudiced by counsel's failure to raise the issue. This issue is without merit.

## B.  Petitioner Bradford

Bradford's sole complaint on appeal is that his counsel was ineffective in refusing to allow him to testify at trial. It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. See Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999). This fundamental right may only be waived by the defendant himself. Id. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62. Such waiver may not be presumed by a silent record. Id. at 162.

In Momon, our supreme court outlined procedural safeguards to be employed by the trial court to ensure that a defendant's knowing, voluntary, and intelligent waiver of the right to testify would be reflected on the record. Id. However, because Momon served only to clarify the existing law, "the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163. Our supreme court cautioned that "neither the right to testify discussed [in Momon], nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied." Id. at 162-63.

Bradford's trial was held on August 26, 1998, over one year prior to the filing of the Momon decision. Therefore, the failure of counsel to utilize the "prophylactic measures" outlined in Momon, namely having Bradford waive his right to testify on the record, is not determinative of the issue. This court has previously observed that "[p]rior to the supreme court's holding in Momon, a petitioner's claim that his counsel prevented him from testifying in his own behalf was treated like any other ground asserted for a claim of ineffective assistance of counsel." Allen Dale Cutshaw v. State, No. E2002-00438-CCA-R3-PC, 2003 WL 147025, at *7 (Tenn. Crim. App. at Knoxville, Jan. 22, 2003), perm. to appeal denied, (Tenn. 2003); see also William Brian Belser v. State, No. E2001-01541-CCA-R3-CD, 2002 WL 1465918, at *4 (Tenn. Crim. App. at Knoxville, July 9, 2002), perm. to appeal denied, (Tenn. 2002).

At the post-conviction hearing, counsel maintained that Bradford waived his right to testify in accordance with trial strategy. Regardless, counsel stated that if Bradford had insisted, counsel would not have impeded his right to testify. In its order denying relief, the post-conviction court implicitly accredited the testimony of counsel. Additionally, the post-conviction court stated, "The petitioner testified at the post-conviction hearing that had he testified at trial, the jury would have acquitted him, but offered no support for this theory. It is hard to envision how the outcome would have been different merely based on conjecture alone." We conclude that the evidence at the post-conviction hearing does not preponderate against the findings of the post-conviction court.

### III. Conclusion

In sum, we affirm the judgments of the post-conviction court as to both petitioners.

_____
NORMA McGEE OGLE, JUDGE